**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

FIDEL SANDOVAL,

              Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

_____

1:20-cv-02837-NLH

**OPINION**

**APPEARANCES:**

ADRIENNE FREYA JARVIS
800 NORTH KINGS HIGHWAY
SUITE 304
CHERRY HILL, NJ 08034

    _On behalf of Plaintiff_

ANDREW CHARLES LYNCH
SOCIAL SECURITY ADMINISTRATION
300 SPRING GARDEN ST
6TH FLOOR
PHILADELPHIA, PA 19123

    _On behalf of Defendant_

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

Insurance Benefits ("DIB")[1] under Title II of the Social

_____

[1] DIB is a program under the Social Security Act to provide

Security Act.  42 U.S.C. § 423, et seq.  The issue before the
Court is whether the Administrative Law Judge ("ALJ") erred in
finding that there was "substantial evidence" that Plaintiff
was disabled as of September 1, 2014.  For the reasons stated
below, this Court will affirm that decision.

I.    BACKGROUND AND PROCEDURAL HISTORY

On August 3, 2017, Plaintiff, Fidel Sandoval,
protectively filed an application for DIB,[2] alleging that he
became disabled on September 1, 2014.  Plaintiff claims that he
can no longer work as an airport safety security officer
because of his anemia (status-post colonic angiodysplasia);
diabetes mellitus; traumatic brain injury; migraine
headaches; lumbar/cervical degenerative disc disease; major
depressive disorder; anxiety disorder; post-traumatic stress
disorder; and attention deficit disorder.[3]

---

disability benefits when a claimant with a sufficient number
of quarters of insured employment has suffered such a mental
or physical impairment that the claimant cannot perform
substantial gainful employment for at least twelve months.  42
U.S.C. § 423 et seq.

[2] A protective filing date marks the time when a disability
applicant makes a written statement of his or her intent to
file for benefits.  That date may be earlier than the date of
the formal application and may provide additional benefits to
the claimant.  See SSA Handbook 1507; SSR 72-8.

[3] Under the regulations, Plaintiff, who was 40 at the time of
his alleged disability onset date, was defined as a "younger
individual" (age 18-49).  20 C.F.R. § 404.1563.

2

After Plaintiff's claim was denied initially and on reconsideration, a hearing was held before an ALJ on December 4, 2018, and a supplemental hearing was held on September 6, 2019.  On October 24, 2019, the ALJ issued her decision, finding that Plaintiff was not disabled.

Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on January 21, 2020, making the ALJ's decision final.  Plaintiff brings this civil action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).

It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id.

4

(citing <u>Van Horn v. Schweiker</u>, 717 F.2d 871, 873 (3d Cir.

1983)); <u>Cotter v. Harris</u>, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the

Commissioner's reasoning is indeed essential to a meaningful

court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained
> the weight he has given to obviously
> probative exhibits, to say that his
> decision is supported by substantial
> evidence approaches an abdication of the
> court's duty to scrutinize the record as a
> whole to determine whether the conclusions
> reached are rational.

<u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978).  Although

an ALJ, as the fact finder, must consider and evaluate the

medical evidence presented, <u>Fargnoli</u>, 247 F.3d at 42, "[t]here

is no requirement that the ALJ discuss in its opinion every

tidbit of evidence included in the record," <u>Hur v. Barnhart</u>,

94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial

review, a district court is not "empowered to weigh the

evidence or substitute its conclusions for those of the fact-

finder." <u>Williams</u>, 970 F.2d at 1182.  However, apart from the

substantial evidence inquiry, a reviewing court is entitled to

satisfy itself that the Commissioner arrived at his decision

by application of the proper legal standards.  <u>Sykes</u>, 228 F.3d

at 262; <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir.

1983); <u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Standard for DIB**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  <u>See</u> 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[4] for

---

[4] The regulations were amended effective March 27, 2017.  <u>See</u> 82 F.R. 5844.  Because Plaintiff's claim was filed after this date, any applicable amendments are cited herein.

determining disability that require application of a five-step
sequential analysis.  See 20 C.F.R. § 404.1520.  This five-
step process is summarized as follows:

1. If the claimant currently is engaged in substantial
   gainful employment, she will be found "not
   disabled."

2. If the claimant does not suffer from a "severe
   impairment," she will be found "not disabled."

3. If the severe impairment meets or equals a listed
   impairment in 20 C.F.R. Part 404, Subpart P,
   Appendix 1 and has lasted or is expected to last for
   a continuous period of at least twelve months, the
   claimant will be found "disabled."

4. If the claimant can still perform work she has done
   in the past ("past relevant work") despite the
   severe impairment, she will be found "not disabled."

5. Finally, the Commissioner will consider the
   claimant's ability to perform work ("residual
   functional capacity"), age, education, and past work
   experience to determine whether or not she is
   capable of performing other work which exists in the
   national economy.  If she is incapable, she will be
   found "disabled."  If she is capable, she will be
   found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is
therefore dependent upon a finding that the claimant is
incapable of performing work in the national economy.

This five-step process involves a shifting burden of
proof.  See Wallace v. Secretary of Health & Human Servs., 722
F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps, the
burden is on the claimant to prove every element of her claim

by a preponderance of the evidence.  See id.  In the final

step, the Commissioner bears the burden of proving that work

is available for the Plaintiff: "Once a claimant has proved

that he is unable to perform his former job, the burden shifts

to the Commissioner to prove that there is some other kind of

substantial gainful employment he is able to perform." Kangas

v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v.

Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

### C.  Analysis

At step one, the ALJ found that Plaintiff had not engaged

in substantial gainful activity since the alleged onset of

disability.  At step two, the ALJ found that Plaintiff's

impairments of anemia (status-post colonic angiodysplasia);

diabetes mellitus; traumatic brain injury; migraine headaches;

lumbar/cervical degenerative disc disease; major depressive

disorder; anxiety disorder; post-traumatic stress disorder;

and attention deficit disorder were severe.  At step three,

the ALJ determined that Plaintiff's severe impairments or his

severe impairments in combination with his other impairments

did not equal the severity of one of the listed impairments.

The ALJ then determined that Plaintiff had the residual

functional capacity ("RFC") to perform sedentary work[5] with

---

[5] See 20 C.F.R. § 404.1567 ("Physical exertion requirements. To

certain restrictions, but that this RFC did not permit Plaintiff to perform his past relevant work as an airport safety security officer (step four).  The ALJ considered hearing testimony from a vocational expert ("VE"), and determined that Plaintiff was not disabled because he was capable of performing other jobs in the national economy, such as a bench hand, final assembler, and document preparer (step five).

Plaintiff presents several arguments as to how the ALJ erred in her decision.  Plaintiff challenges two findings concerning his environmental limitations - noise and bright lights.  Plaintiff also contends that the ALJ improperly considered his fatigue and his need to use a cane.[6]

All of these challenges arise from the ALJ's RFC determination.[7]  The ALJ found:

---

determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

[6] Another one of Plaintiff's challenges is to the finding that he is capable of performing the job of bench hand.  The Court addresses this argument, *infra*, note 14.

[7] A claimant's RFC reflects "what [the claimant] can still do despite [his or her] limitations."  20 C.F.R. 404.1545(a). The RFC determination is for the ALJ to determine, not a medical source.  See 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c) (explaining that the RFC finding is a determination expressly reserved to the Commissioner rather than any medical source).

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; and occasionally balance, stoop, kneel, crouch and crawl. He can tolerate no exposure to extreme heat or cold, avoid concentrated wetness or humidity, noise, irritants such as fumes, odors, dust and gases, poorly ventilated areas or exposure to chemicals. He can have no exposure to workplace hazards such as moving machinery or unprotected heights. He is limited to simple, routine, repetitive tasks in a work environment free of fast paced production requirements involving only simple work related decisions and few, if any, work place changes. He can work for two hours before needing a break. He can have no interaction with the public and only occasional interaction with supervisors and co-workers, in proximity but not on joint or shared tasks. He can frequently finger, handle and feel and is allowed to wear colored lenses in bright work environments. Finally, he requires a sit/stand option available where he can alternate from sitting to standing/walking every hour while staying on task.

(R. at 20.)

### 1.   Environmental limitations

- *Noise*

The ALJ found that Plaintiff "can tolerate no exposure to extreme heat or cold, avoid concentrated wetness or humidity, noise, irritants such as fumes, odors, dust and gases, poorly ventilated areas or exposure to chemicals."[8]  Plaintiff argues

---

[8] Plaintiff interprets this sentence to mean that Plaintiff was to "avoid concentrated noise."  (Docket No. 14 at 17.) Although the sentence could have been drafted more clearly, that interpretation appears to be correct.  See Form SSA-4734-BK at 5, providing four levels for environmental limitations in the RFC: UNLIMITED, AVOID CONCENTRATED EXPOSURE, AVOID EVEN

that this finding is improper in three ways based on a June 10, 2019, medical source statement prepared by Plaintiff's treating physician, Sujata Soni, M.D., at Veterans Affairs.

In the environmental limitations section of the medical source statement, Dr. Soni completed the form as follows:

| Condition | Quiet (Library) | Moderate (Office) | Loud (Heavy Traffic) | Very Loud (Jackhammer) |
|---|---|---|---|---|
| Noise | ✓ | | | |

Identify the particular medical or clinical findings (i.e., physical exam findings, x-ray findings, laboratory test results, history, and symptoms including pain, etc.) which support your assessment or any limitations and why the findings support the assessment.

VA audio

(R. at 4201.)

On different areas of the form regarding Plaintiff's ability to perform various other work-related activities, Dr. Soni indicated that her answers were "per pt.," meaning that what she recorded was based on Plaintiff's statements to her. That notation did not appear next to the "noise" section.   (R. at 4197-4202.)

In her decision, the ALJ did not consider Dr. Soni's medical source statement to constitute a medical opinion,[9]

---

MODERATE EXPOSURE, AVOID ALL EXPOSURE.

[9] An ALJ is required to state what weight he or she ascribes to

explaining,

> In June 2019, Sujata Soni, M.D., a treating physician, prepared a Medical Source Statement regarding the claimant's functional limitations; however, the limitations assessed therein appeared "per [patient]" and did not represent Dr. Soni's individual assessment of the claimant's abilities and restrictions (Exhibit 18F). Rather, they appeared to merely recite the claimant's allegations and description of his symptoms.  As such, this record does not constitute a medical opinion.

(R. at 28.)

Plaintiff argues that the ALJ erred (1) by not directly addressing Dr. Soni's finding that Plaintiff required a "quiet" work environment, and instead without explanation found that Plaintiff needed to "avoid concentrated noise," which is a less limiting limitation than "quiet"; (2) by not considering Dr. Soni's medical source statement to constitute her medical opinion with regard to this environmental limitation because "per pt" was not noted, and Dr. Soni checked "quiet" based on the clinical findings of a "VA audio"; and (3) Dr. Soni's requirement that Plaintiff needs a "quiet" work environment was not considered by the vocational

---

a medical opinion, but not to other forms of medical evidence. Rafine v. Commissioner of Social Security, 2020 WL 3073829, at *5 (D.N.J. 2020); see 20 C.F.R. § 404.1527(c) ("How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.").

expert or the ALJ when it was determined Plaintiff was capable of performing three jobs, all of which have "moderate" noise levels.

According to SSR 96-9p, "Since all work environments entail some level of noise, restrictions on the ability to work in a noisy workplace must be evaluated on an individual basis.  The unskilled sedentary occupational base may or may not be significantly eroded depending on the facts in the case record.  In such cases, it may be especially useful to consult a vocational resource."  Here, the ALJ did just that.

At the hearing, the ALJ asked the VE to consider a hypothetical person with an RFC that matched Plaintiff's RFC,[10]

---

[10] An ALJ is only required to pose hypotheticals to a VE that contain the claimant's medically established impairments, rather than all of the impairments a claimant claims.  See Pidgeon v. Colvin, 2016 WL 2647666, at *13 (D.N.J. 2016) (citing Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) (quoting Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005)) ("[A] hypothetical posed to a vocational expert must reflect all of a claimant's impairments.  But this do[es] not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.  Rather, in posing a hypothetical to the VE, references to all impairments encompass only those that are medically established.  And that in turn means that the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations.  As the Third Circuit noted in Rutherford, objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself.  Accordingly, if the ALJ did not incorporate the limitation into the RFC, then the ALJ did not need to incorporate the limitation into the hypothetical posed

including, "We're going to avoid even moderate exposure to extreme heat and cold.  We're going to avoid concentrated exposure to wetness, humidity, noise, vibration, fumes, odors, dusts and gases and poor ventilation."  (R. at 555.)  The VE asked a clarifying question:  "Where you had said with regard to noise, . . . if I just kept it at a 3, which is moderate, is that okay or does it have to go down to a 2, which is quiet?"  (Id.)  The ALJ answered, "No. We -- we would be avoiding concentrated exposure, but not all exposure."  (Id.) The VE responded with several jobs including a bench hand, final assembler, and document preparer, which are of "moderate" noise levels.[11]  (Id. at 557-58.)

_____

to the VE." (internal quotations omitted)).

[11] See U.S. Dep't of Labor, Selected Characteristics of Occupations in the Revised Dictionary of Occupational Titles (1993) (SCO), at D-2 (defining SCO Noise Intensity Level) ("[Code] 2 [Level] Quiet [Illustrative Examples] library; many private offices; funeral reception; golf course; art museum"); id. ("[Code] 3 [Level] Moderate [Illustrative Examples] business office where typewriters are used; department store; grocery store; light traffic; fast food restaurant at off-hours"); see also Program Operations Manual System (POMS), § DI 25001.001(A)(49) (Agency manual reiterating SCO definitions of noise levels), https://secure.ssa.gov/poms.nsf/lnx/0425001001:

**49. Noise level**
A rating in the SCO based on the following coding system:

| Code | Level | Illustrative Examples |
|---|---|---|
| 1 | Very quiet | Isolation booth for hearing test |

Plaintiff contends that the ALJ failed to reconcile Dr. Soni's checkmark for "quiet" based on the "VA audio" with the ALJ's finding that Plaintiff was capable of performing jobs that were at the "moderate" noise level.  Plaintiff contends that this in error because not only did the ALJ fail to consider Dr. Soni's remark about Plaintiff's exposure to noise to be a medical opinion, such an opinion should have been afforded great weight because it was offered by a treating source.  See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (explaining that a "cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time").

The Court does not agree.  First, even if the Court considered Dr. Soni's checkmark for "quiet" based on the "VA audio" to constitute a medical opinion, it is "weak evidence"

| 2 | Quiet | Library, many private offices |
| 3 | Moderate | Department or grocery store |
| 4 | Loud | Large earth movers, heavy traffic |
| 5 | Very loud | Rock concert, jack hammer |

in this form.  See Rafine v. Commissioner of Social Security,
2020 WL 3073829, at *6 (D.N.J. 2020) (citing Stelzer v.
Commissioner of Social Security, 2019 WL 950165, at *6 (D.N.J.
2019) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir.
1993) ("Form reports in which a physician's obligation is only
to check a box or fill in a blank are weak evidence at
best.").  Dr. Soni completed the form on June 10, 2019, and
Dr. Soni's reference to "VA audio" is without any substantive
explanation of when the test was conducted, what the test
measured, and how the results of that test equated to a
finding that Plaintiff was restricted to a "quiet" work
environment as of June 10, 2019.  The lack of any meaningful
explanation to support the check in the box for "quiet"
renders this opinion to be thin support for a more restrictive
limitation of Plaintiff's exposure to noise.  See Zonak v.
Commissioner of Social Sec., 290 F. App'x 493, 497 (3d Cir.
2008) (affirming the ALJ's rejection of the plaintiff's
treating physician's opinion because it was provided on a
check-box form and no reasons were given in support of the
doctor's conclusion on that form)).

Second, the record evidence recited by the ALJ in her
decision does not support Dr. Soni's opinion.  In April 2015
and November 2017, Plaintiff reported a startle effect with

loud noises, but in addition to participating in activities such as playing video games, watching TV, and expressing a desire to return to school, he was able to travel to California by airplane in October 2015 and December 2017/January 2018, and while there he visited family and went to museums and wineries.  (R. at 25-26.)  In January 2019, Plaintiff was able to start college.  (R. at 26.)  Medical records and reports of consultative examiners did not note that Plaintiff reported any issues with noise during any of those activities.  (Id.)

Additionally, in noting that there was a lack of evidence of significant residual limitations with regard to Plaintiff's exposure to noise, the ALJ also noted that in March 2018, Emil Liebman, M.D., a state agency medical consultant, found that Plaintiff had no severe hearing impairments, and that as of April 2019, Plaintiff had been having a positive response to hearing aids, which assisted his ability to understand conversations in noisy environments and listen to TV at normal levels.[12]  (R. at 27, 142.)

Based on the foregoing record evidence, the Court finds that substantial evidence supports the ALJ's determination

---

[12] The ALJ related that it was noted in March 2018 that Plaintiff had tinnitus and was fitted with hearing aids, which reportedly improved this condition.  (R. at 16.)

that Plaintiff was to "avoid concentrated exposure" to noise, which equates to a moderate noise level work environment of the jobs suggested by the VE.  Other than Dr. Soni's checkmark for "quiet" on the medical source statement form, the remainder of the record evidence supports the ALJ's RFC determination.  Thus, even if the ALJ erred as Plaintiff argues by failing to consider Dr. Soni's check in the box for "quiet" as a medical opinion of a treating medical source, such error is harmless.  See McGraw v. Commissioner Social Sec., 609 F. App'x 113, 116 (3d Cir. 2015) (citing Rutherford, 399 F.3d at 553 (holding that any error that would not affect the outcome of the proceeding was harmless)); see also Plummer v. Apfel, 186 F.3d 422, 439 (3d Cir. 1999) ("[A]n ALJ is permitted to accept or reject all or part of any medical source's opinion, as long as the ALJ supports his assessment with substantial evidence."), cited by Brownawell v. Commissioner, 554 F.3d 352, 355 (3d Cir. 2008)); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("We are also cognizant that when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them.... [W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was

rejected.").

- *Bright lights*

The ALJ observed that Plaintiff sustained several head injuries while in the military, he reported several episodes of blast exposures from rocket launchers which were associated with dizziness, and he reported feeling dazed and confused with tunnel vision with some head injuries. (R. at 24.) The ALJ related that treatment notes since the alleged onset date reflected Plaintiff's history of traumatic brain injuries ("TBI"), which mostly manifested in migraine headaches. (Id.) The ALJ further noted, however, that through 2018-19 Plaintiff planned to attend college, and in May 2019 Plaintiff reported his headaches had improved, with his headaches occurring 1-2 times per week, they were of milder severity, and they resolved with his prescribed medication. (Id.) The ALJ concluded,

> Considering his history of TBIs and resultant migraines, and in light of his hearing testimony regarding light sensitivity and need for colored lenses, the undersigned finds the claimant is restricted from work around workplace hazards (due to potential distractibility or vision issues), [he] must be allowed to wear colored lenses in bright colored environments, and [he] requires the environmental restrictions identified above due to potential migraine triggers.

(Id.) In the statement of Plaintiff's RFC, the ALJ determined that Plaintiff "is allowed to wear colored lenses in bright

work environments."  (R. at 20.)

Plaintiff argues that these findings were in error because the ALJ failed to give any reason for rejecting Plaintiff's testimony that colored lenses in his glasses delayed but did not prevent the onset of headaches in environments with bright lights.  Plaintiff argues that this error was harmful because the jobs of bench hand and final assembler could not be performed by Plaintiff because, as the VE testified, those jobs usually had fluorescent lighting, which is "bright light."  Plaintiff further argues that the VE testified that even though the document preparer job would have "typical incandescent lighting," "the vocational expert did not say that such incandescent lighting would not be bright," and a "light that is not fluorescent can be bright." (Docket No. 14 at 27.)

Plaintiff's arguments are unpersuasive.  First, contrary to Plaintiff's contention that the ALJ provided no explanation as to why she rejected Plaintiff's testimony, the ALJ properly supported the RFC regarding Plaintiff's limitation with bright lights.[13]  The ALJ noted Plaintiff's history of TBIs and

---

[13] See SSR 16-3-p ("An individual's statements may address the frequency and duration of the symptoms, the location of the symptoms, and the impact of the symptoms on the ability to perform daily living activities. An individual's statements may also include activities that precipitate or aggravate the

migraines, but further noted that he desired to attend college, and that as of May 2019 his migraines had improved, were limited to 1-2 times a week, and were milder.  Based on that evidence, the ALJ determined that Plaintiff did not need to avoid jobs that had bright lights, but rather Plaintiff was limited to jobs where he could wear glasses with colored lenses to reduce the negative effects of bright lights. Plaintiff's challenge to this finding amounts to a mere disagreement with the ALJ's assessment rather than showing that the ALJ's findings were not properly supported.[14]

Second, even accepting that Plaintiff would not be able to perform the jobs of bench hand and final assembler because those jobs would have bright fluorescent lighting, and glasses

---

symptoms, medications and treatments used, and other methods used to alleviate the symptoms. We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence.").

[14] See, e.g., Perkins v. Barnhart, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); Moody v. Commissioner of Social Security Administration, 2016 WL 7424117, at *8 (D.N.J. 2016) ("[M]ere disagreement with the weight the ALJ placed on the opinion is not enough for remand."); Grille v. Colvin, 2016 WL 6246775, at *8 (D.N.J. 2016) ("Distilled to its essence, Plaintiff's argument here amounts to nothing more than a mere disagreement with the ALJ's ultimate decision, which is insufficient to overturn that decision.").

with colored lenses would not be helpful, the VE testified
that the document preparer job would not have such bright
lights.  Although, as points out as a practical matter "light
that is not fluorescent can be bright," the VE did not
identify the document preparer job as having "bright light"
working conditions, which the VE distinguished from the other
two jobs which did.  At the end of the five-step analysis, an
ALJ need only establish that a claimant is capable of
performing one job that exists in significant numbers in the
national economy, and with regard to Plaintiff's bright light
argument, the document preparer job meets that requirement.[15]
See Penrose v. Commissioner of Social Security, 2020 WL
7640585, at *7 (D.N.J. 2020) (citing Sasse v. Commissioner
of Social Security, 2019 WL 1233553, at *8 (D.N.J. 2019)
(citing Reed v. Commissioner of Social Security, 2018 WL
5617549, at *6 (D.N.J. 2018) (citing Nalej v. Berryhill, 2017
WL 6493144, at *11 (D.N.J. 2017) (explaining that SSA
regulations provide that work exists in the national economy

---

[15] This one-job requirement also defeats Plaintiff's challenge
to the ALJ's finding that Plaintiff was capable of performing
the bench hand position based on the "apparent obvious
conflict between [the VE's] testimony and the DOT with respect
to the handling that work as a bench hand requires."  (Docket
No. 14 at 30.)  Even if this were true, Plaintiff has not
shown how he is incapable of performing the document preparer
position.

when there is a significant number of jobs in one or more occupations that an individual can perform, and holding that even if the ALJ erred in finding the plaintiff capable of performing two of three jobs, he did not err as to the third job, and that finding as to only one job was sufficient to support his determination that the plaintiff was not disabled)).

### 2. Fatigue

Plaintiff argues that the ALJ's finding that he could work at the sedentary level for eight hours per day, five days per week, or an equivalent work schedule does not properly account for his fatigue, evidence of which he established through his testimony and medical records. The Court does not agree.

Over several pages in her decision, the ALJ detailed Plaintiff's testimony, including about his fatigue, and the medical evidence regarding Plaintiff's conditions which were causing his fatigue. In consideration of that evidence, the ALJ concluded,

> [T]he claimant is limited to a range of work at the sedentary exertional level, with the additional postural and environmental restrictions adopted above; considering his neuropathy, anemia, fatigue and bleeding risk, the undersigned finds it prudent to restrict him from work around hazards such as moving machinery or unprotected heights.

(R. at 14.)   Thus, by finding that Plaintiff was limited to

sedentary work,[16] along with several other limitations, the ALJ

specifically accounted for Plaintiff's fatigue.   The ALJ did

not err in considering Plaintiff's fatigue.[17]

### 3.   Use of a cane

Plaintiff argues that that ALJ erred in not taking into

account that Plaintiff began using a case prescribed by Dr.

Soni in June 2019.   This argument is unavailing.

The ALJ detailed Plaintiff's orthopedic impairments, and

noted,

> Though the claimant has not required significant
> treatment for his spinal complaints, the undersigned
> finds it prudent to limit him to a range of work at the
> sedentary exertional level, with the additional postural
> and environmental restrictions adopted above.
> Furthermore, considering his potential for increased pain

---

[16] 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no
more than 10 pounds at a time and occasionally lifting or
carrying articles like docket files, ledgers, and small tools.
Although a sedentary job is defined as one which involves
sitting, a certain amount of walking and standing is often
necessary in carrying out job duties. Jobs are sedentary if
walking and standing are required occasionally and other
sedentary criteria are met.").

[17] The Court also does not find compelling Plaintiff's one-
sentence argument that the ALJ should have independently
obtained medical-expert testimony to address the functional
impact beyond environment restrictions of Plaintiff's fatigue.
It is Plaintiff's burden to prove that an impairment impacts
his ability to work.  See Wallace v. Secretary of Health &
Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (explaining
that the first four steps of the sequential step analysis, the
burden is on the claimant to prove every element of her claim
by a preponderance of the evidence).

with maintaining prolonged positions, the undersigned
finds he requires a sit/stand option as detailed above.
As discussed above, the undersigned has also been
diagnosed with carpal tunnel syndrome, and this condition
has been accommodated with manipulative restrictions set
forth in the residual functional capacity adopted herein.
Though the claimant testified he had used a cane for the
past 5-6 months, there is no evidence to suggest that
such cane usage can be expected to persist for at least
12 months and thus has not been accommodated in the above
residual functional capacity.

(R. at 25.)

Plaintiff argues that substantial evidence does not

support the conclusion that his use of a case was not expected

to last for at least 12 months.  Under the Social Security

Act, a disability is the "inability to engage in any

substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12

months . . . ."  42 U.S.C. § 423(d); 20 C.F.R. § 404.1509

("Unless your impairment is expected to result in death, it

must have lasted or must be expected to last for a continuous

period of at least 12 months.  We call this the duration

requirement.").  Plaintiff argues that the ALJ did not cite

evidence or medical records to show that Plaintiff's herniated

lumbar disk associated with radiculopathy would spontaneously

remit within one year, and a "herniated lumbar disc with

25

radiculopathy is not something like an ankle sprain that even a layperson knows would, absent unusual circumstances, generally get better within a year.  The ALJ thus improperly played doctor, implying that she knew that whatever caused Mr. Sandoval's need for a cane in mid-2019 would no longer cause that need within a year."  (Docket No. 14 at 24.)

To the contrary, the ALJ's RFC specifically accommodated for Plaintiff's orthopedic impairments, and the ALJ noted, "July 2019 imaging of his lumbar spine revealed no overall change since March 2017 imaging."  (R. at 23.)  Plaintiff did not receive or use a cane until June 2019.  Thus, the ALJ's conclusion that Plaintiff's use of a cane did not meet the durational requirement because his lumbar spine condition had not changed since March 2017 is supported by substantial evidence.[18]

---

[18] The Court notes that Dr. Soni did not opine on the necessity of Plaintiff using a cane - the prescribing note simply states, "6/11 nc plz dispense cane also."  (R. at 4263.)  The Court also notes another portion of the record visit:

> Reviewed with patient for completion of form: states ext weakness and physical decline in last 1 1/2yr however informed writer 6/6/19 when he brought SS disability forms from lawyer who is guiding and assisting in pt care.  There is a very sudden abrupt change in what patient reveals to writer regarding decreased gi increased weakness dropping things decreased ambulation[.]

(Id.)

### III. Conclusion

This Court may not second guess the ALJ's conclusions, and may only determine whether substantial evidence supports the ALJ's decision.  Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010)(citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992))(explaining the pinnacle legal principal that a district court is not empowered to weigh the evidence or substitute its conclusions for those of the ALJ).  For the foregoing reasons, the ALJ's determination that Plaintiff was not disabled as of September 1, 2014 is supported by substantial evidence.  The decision of the ALJ will therefore be affirmed.

An accompanying Order will be issued.


Date: July 26, 2021                    s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

27